# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SAFECO INSURANCE COMPANY OF )
AMERICA, )
                                                )
                 Plaintiff, )
                                                )
v. )           Case No. CIV-16-193-RAW
                                                )
ROD WIEMER, et al., )
                                                )
                 Defendants. )

## **ORDER**

Before the court is the motion of certain defendants for summary judgment. Plaintiff filed this action seeking a declaratory judgment that coverage on a Safeco policy had terminated at the time of the pertinent accident, that therefore Safeco had no duty to defend or indemnify Portra McAlister (who was driving the pertinent vehicle – a 1995 Buick LeSabre -- and was involved in the accident), and that Robert and Georgine Dagenet did not have an insurable interest in the relevant automobile at the time of the accident.[1]

The standard for the granting of a summary judgment motion is set forth in Rule 56(a) F.R.Cv.P., i.e., that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law. *Bird v. West Valley City,* 832 F.3d 1188, 1199 (10th Cir.2016). The court views the evidence and draws

---

[1] *See* 36 O.S. §3605 (defining insurable interest).

reasonable inferences in the light most favorable to the nonmoving party. *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1237 (10th Cir.2013). The parties have waived jury trial (#91) but that does not affect the applicable standard, as "disputed facts in a nonjury case are determined by trial and not on summary judgment motion." *Taggart v. Wadleigh-Maurice, Ltd.,* 489 F.2d 434, 439 (3rd Cir.1973); *see also Roth v. American Hosp. Supply Corp.,* 965 F.2d 862, 865 (10th Cir.1992).

The accident took place on October 17, 2010, involving the vehicle McAlister was driving, a vehicle driven by Brigitte Smith-Thomason (defendant in the case at bar) and another vehicle driven by Ike Lee. Carol Cerniglia was a passenger in the car driven by Lee. Both Cerniglia and Lee are also named defendants in this case. The Dagenets are also named defendants. McAlister has since passed away, and the personal representative of her estate is a defendant in this action. The personal representative has filed an answer (#33) but is represented by separate counsel from the other defendants and has not joined the present motion.

On or about October 10, 2010, the Dagenets had "given" the automobile to McAlister, at least in the sense that she was a permissive driver. Title to the vehicle was still in the name of Robert Dagenet at the time of the accident. Plaintiff argues that nevertheless the transfer of the vehicle constituted a gift to Portra McAlister before the accident and therefore the Dagenets no longer had an insurable interest in the vehicle. Accordingly, the argument continues, coverage for the vehicle under the Safeco policy terminated at the same time. This

2

appears to be an issue of first impression under Oklahoma law. Therefore, this court must attempt to predict how the state's highest court would resolve the issue. *See Belnap v. Iasis Heathcare,* 844 F.3d 1272, 1295 (10th Cir.2017). The court may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law. *Wade v. EMCASCO Ins. Co.,* 483 F.3d 657, 666 (10th Cir.2007).

To constitute a valid *inter vivos* gift under Oklahoma law, the donor must be competent to make a gift. *Estate of Davenport v. C.I.R.,* 184 F.3d 1176, 1181 (10th Cir.1999)(citations omitted). In addition, there must be donative intent, delivery of the gift, and the donor must strip himself of all ownership and dominion over the subject matter. *Id. (*citations omitted). The deposition testimony of the Dagenets (at the pages referenced after Defendants' Statement of Uncontroverted Facts, ¶¶2 & 3, #73 at page 6 of 28 in CM/ECF pagination) is clear that, in the Dagenets' view, McAlister was driving the vehicle in what might be described as (these are the court's words, not the Dagenets') an extended test drive. That is, McAlister was driving the car to see if McAlister liked it. The gift would take place (and title transferred) <u>if</u> McAlister decided that McAlister wanted the car.

In response, plaintiff points to a post-accident recorded statement by McAlister (#79-2).[2] McAlister states that the Dagenets "gave" her the car, (*Id.* at page 2 of 4), but it is far

---

[2]Defendants object to the statement as hearsay, but the court will consider it for purposes of the present motion.

from clear that McAlister was answering with knowledge of the distinction between permissive use vs. gift. Moreover, McAlister evidently was at Southcrest Hospital at the time of the statement and she also stated "My mind's not working very good." (*Id.* at page 3 of 4). The court gives this statement little weight. Plaintiff also notes the deposition testimony of Marsha Hansen, an adjuster for Cornerstone National Insurance Company, which insured McAlister's other vehicle. Hansen testified that she was told by Mr. Dagenet that the Dagenets let McAlister have the vehicle "to use." (#79-3 at page 2 of 18). Further, that Mr. Dagenet "was going to sign the title over to [McAlister] whenever he could find it." (*Id.*). This is ambiguous, in that Mr. Dagenet may have been saying he would sign over the title <u>when and if</u> McAlister indicated she wanted the vehicle. This interpretation matches the unequivocal testimony of the Dagenets contained in their own depositions, i.e., any donative intent was contingent. Still, in the present context, the court interprets the testimony in the light most favorable to plaintiff.

In reply, defendants point to Oklahoma statutes. In 47 O.S. §1103, it is stated that it is the "intent of the Legislature" that a vehicle owner possess a certificate of title "as proof of ownership." To the same effect is the first sentence of 47 O.S. §1105(B). In 47 O.S. §1-141, the term "owner" is defined as "[a] person who holds the legal title of a vehicle. . . ." Plaintiff, however, has noted the statement in *Green v. Harris*, 70 P.3d 866 (Okla.2003) that "[m]otor vehicle certificates of title in Oklahoma are documents of convenience and are not necessarily controlling of ownership of an automobile." *Id.* at 871. Defendants contend this

4

statement is dicta and does not comport with statutory language; however, the Tenth Circuit relied on the statement (in a different context) in *Universal Underwriters Ins. Co. v. Winton,* 818 F.3d 1103, 1110 (10th Cir.2016). In any event, it is not disputed that, at the time of the accident, Robert Dagenet held the legal title of the vehicle. The issue remains what is the legal effect of this fact.

In *Mendenhall v. Mountain West Farm Bureau Mut. Ins. Co.,* 274 P.3d 407 (Wyo.2012), the Supreme Court of Wyoming expressly stated "[t]he elements of an *inter vivos* gift do not contain a special element requiring the transfer of title if an automobile is at issue." *Id.* at 410. The court then turned to the *Restatement (Third) of Property: Wills & Other Donative Transfers* §6.2 cmt. i (2003). Under that guidance, and citing approvingly to *Brackin v. Brackin,* 894 N.E.2d 206 (Ind.Ct.App.2008), the court concluded "while there is a presumption that the person named on the certificate of title is the owner, that presumption may be overcome by clear and convincing evidence of the donor's intent to gift the vehicle." *Id.* at 411. In the absence of controlling Oklahoma authority, this court predicts the Supreme Court of Oklahoma would follow this ruling. Even viewing McAlister's recorded statement and Hansen's testimony in the light most favorable to plaintiff, the presumption of ownership has not been overcome by clear and convincing evidence. The court finds summary judgment is appropriate in defendants' favor as to the purported gift of

the vehicle.[3]

On October 10, 2010 (i.e., when the Dagenets allowed McAlister to begin driving the vehicle) the Dagenets had an automobile insurance policy with plaintiff Safeco which listed the Buick and other vehicles. The policy was still in effect a week later at the time of the accident. Plaintiff next contends that, under the terms of the Safeco policy, coverage for the vehicle was automatically terminated when Cornerstone National Insurance Company added the vehicle to McAlister's existing Cornerstone policy (as a "newly acquired vehicle") effective October 10, 2010. Again, the accident took place on October 17, 2010. In response, defendants present evidence that Cornerstone did not add coverage for the vehicle until October 22, 2010, (after the accident) and made the coverage retroactively effective to October 10, 2010. (*See* #73-13, page 2 of 2; #78, pages 33-34 of 49). Moreover, the Cornerstone policy provides that coverage for a newly acquired vehicle "begins on the date you become the owner."

The court rejects this argument of plaintiff as well. Safeco did not delete the Buick from coverage until the effective date of October 19, 2010 (two days after the accident). *See* #73-11, page 2 of 3; #79-5. Safeco (via its adjuster, Bob Brewster) first contacted McAlister (i.e., learning of the "gift" to McAlister) on October 21, 2010, which is two days after Safeco's effective termination date. The Dagenets had not cancelled coverage for the Buick

---

[3] Under these facts, this court does not find applicable the "factual expectation" theory of insurable interest recognized in *Snethen v. Okla. State Union of the Farmers' Educ. and Cooperative Union of America,* 664 P.2d 377, 380 (Okla.1983). McAlister did not have such a reasonable factual expectation.

at the time of the accident. The policy provided coverage on the Buick from October 14, 2010 until April 14, 2011. Moreover, the court is not persuaded that the unilateral conduct of Cornerstone (an insurer for a permissive driver) was legally effective to "automatically" negate Safeco's policy of the vehicle's owner. *Cf. American Express Ins. Co. v. AIG Ins.,* 1998 WL 470637, *4 (Conn.Super.Ct.1998). A contrary ruling would give license to potential tortious interference with an existing contract.[4] As stated, the parties have agreed to a bench trial, but this case seems largely governed by legal principles, and in the court's view there are no genuine disputes of material fact or issues of witness credibility such that this action should proceed to trial.

It is the order of the court that the motion for summary judgment (#73) is hereby granted. Although defendant Rod Wiemer, personal representative of the estate of Portra Ann McAlister, did not join the summary judgment motion, he is also terminated as a party defendant under the same reasoning. The case is administratively closed.

**ORDERED THIS 16th DAY OF NOVEMBER, 2017.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

[4] There is language in the Safeco policy that "Coverage for your covered auto shall automatically terminate on the effective date of any other motor vehicle insurance policy covering that vehicle." In the court's view, this language cannot logically apply to insurance added *without the consent* of Safeco's insured and (under the court's analysis) *mistakenly* added by Cornerstone.